1    WO

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF ARIZONA

9

10

11

12   B. Spain,                        )
                                       )
13                  Plaintiff,         )    No. CIV 07-0308-PHX-RCB
                                       )
14           vs.                       )          O R D E R
                                       )
15   EMC Mortgage Company, *et al.*,   )
                                       )
16                  Defendants.        )
     _____ )

17

18       Reviewing plaintiff's second amended complaint ("SAC") (doc.

19   150) and the various potentially dispositive defense motions, the

20   immortal words of baseball sage Yogi Berra come to mind, "This is

21   deja vu all over again."[1]  Despite this court's admonitions and

22   guidance in terms of repleading, plaintiff *pro se* B. Spain's SAC

23   bears a striking resemblance to his First Amended Complaint

24   ("FAC").  There are stylistic changes in the SAC in that it now

25   contains numbered paragraphs.  It also decreases the number of

26   _____

27       [1]    Although "[t]his epigram is often attributed to" Yogi Berra, he
     "'denies ever saying it.'"  <u>Williams v. Ashland Eng'g Co.</u>, 45 F.3d 588, 589 n. 1
28   (1st Cir.) (quoting Ralph Keyes, *Nice Guys Finish Seventh: Phrases, Spurious Sayings
     and Familiar Misquotations* 152 (1992)) (subsequent case history omitted).

1  fictitious defendants from 1000 to 100 and omits some, but not all,
2  of the superfluous arguments and case law which permeated the FAC.
3  Nonetheless, this SAC, which appears to be a slightly shorter "cut
4  and paste version" of the FAC, suffers from many of the same
5  infirmities as the FAC.  It remains largely incomprehensible and
6  "undeniably confusing[.]"  See Spain v. EMC Mortgage Co., 2008 WL
7  752610, at *3 (D.Ariz. March 18, 2008) ("Spain I").

8      What is ascertainable though is that despite amendment,
9  plaintiff has failed to cure the fundamental defect of lack of
10  standing.  Therefore, because plaintiff does not have standing to
11  pursue these alleged violations of the Racketeering Influenced and
12  Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., the
13  court lacks subject matter jurisdiction and grants defendants'
14  various motions to dismiss in that regard, as more fully explained
15  below.

16                          ***Background***

17      Plaintiff did not file his amended complaint within the 30 days
18  allotted in Spain I.  Being lenient, however, and "[a]ccepting at
19  face value [his] assertions that he needed . . . additional time
20  . . . due to the numerous corrections that are requested," the
21  court granted plaintiff's motion for an extension of time in which
22  to file and serve his SAC.  Spain v. EMC Mortgage Co., 2008 WL
23  2328358, at *4 (D.Ariz. June 4, 2008) (internal quotation marks and
24  citation omitted) ("Spain II").

25      Shortly after plaintiff lodged his SAC, Poli & Ball[2] filed a
26  motion to dismiss for lack of subject matter jurisdiction pursuant

27  ────────────────
28      [2]    The court will continue to group the numerous defendants based upon
    their shared counsel.  See Spain I, 2008 WL 752610, at *1 n.1.

1  to Fed. R. Civ. P. 12(b)(1) arguing, as they did with respect to

2  the FAC, that plaintiff does not have standing.  Mot. (doc. 138).

3  Alternatively, Poli & Ball are moving for a more definite statement

4  pursuant to Rule 12(e).  Id.  Defendants Bank of American ("BOA"),

5  Pite Duncan, and NBI expressly join in Poli & Bell's motion.  Mot.

6  (doc. 156) at 3;  Joinder (doc. 188); and Mot. & Joinder (doc.

7  146).  NBI also filed a motion, but for summary judgment, shortly

8  after the lodging of the SAC (doc. 146).  In the meantime,

9  plaintiff filed a "Request for Reconsideration" of Spain I (doc.

10  154).

11      After the filing of the SAC,[3] BOA sought dismissal pursuant to

12  Rule 12(b)(1) for lack of subject matter jurisdiction, asserting,

13  like Poli & Ball, that plaintiff does not have standing (doc. 156).

14  Additionally, BOA seeks dismissal pursuant to Fed. R. Civ. P.

15  12(b)(6) for failure to state a claim upon which relief can be

16  granted.  Defendants NBI, Pite Duncan, and David W. Huston

17  expressly join in BOA's dismissal motion.  See Joinders (doc. 157;

18  188; and 194).

19      EMC likewise is moving for dismissal of the SAC pursuant to

20  Rule 12(b)(6) (doc. 159).  NBI expressly joins in that motion as

21  well (doc. 161).  Pite Duncan, too, is moving for dismissal for

22  lack of subject matter jurisdiction, arguing that plaintiff does

23  not have standing; and alternatively for dismissal for failure to

24  state a claim (doc. 190).  Pite Duncan also is requesting the

25  court to take judicial notice of 17 exhibits (doc. 191).  Poli &

26  Ball join in both this motion and the request for judicial notice

27  —————————————————

28      [3]    The next day plaintiff filed his third amended complaint.

1  ("RJN") (doc. 193).  Defendants NBI, EMC, and Dean J. Werner join

2  in Pite Duncan's motion, but not the RJN (docs. 192; 196; and 197).

3      When plaintiff did not timely respond to their motion to

4  dismiss, EMC filed a "Request for Summary Disposition" (doc. 204).

5  The next day plaintiff filed two motions: (1) to compel EMC to

6  accept service (doc. 206); and (2) for an extension of time in

7  which to respond to EMC's dismissal motion (doc. 207). At the same

8  time, plaintiff lodged his proposed response to EMC's motion (doc.

9  208). Ultimately, however, the court denied plaintiff's motion for

10  an extension (doc. 236).  Plaintiff then moved for reconsideration

11  of that denial (doc. 237).  None of the defendants responded to

12  this motion for an extension.[4]

13                          ***Discussion***

14      At the outset, the court must clarify the scope of the

15  documents which it will be considering on these motions.  First of

16  all, the court denies plaintiff's most recent motion for an

17  extension (doc. 237).  Thus, it will not consider plaintiff's

18  response to EMC's motion (doc. 208).  Plaintiff is not prejudiced

19  by this ruling, however, because that response is identical to two

20  of his other responses (docs. 183 and 201), which the court is

21  considering.

22      Second, the court is disregarding the four replies which

23  plaintiff filed (docs. 152; 220; 228; and 233) because the Local

24  Rules make no provision for a "reply to a reply."  The Local Rules

25  are explicit in allowing a "Memorandum by Moving Party[;]" a

26  _____

27      [4]     To the extent any party is seeking oral argument, the court denies
these requests.  Given the court's intimate familiarity with this action, and the
repetitive nature of the parties' respective arguments, oral argument would not
28  assist the court.

1  "Responsive Memorandum[;]" and a "Reply Memorandum" - nothing more.

2  See LRCiv 7.2.  For that same reason, the court also is

3  disregarding Poli & Ball's "Response to Plaintiff's Reply[,]" (doc.

4  160); and plaintiff's "Supplemental Brief[.]" (doc. 230).

5      The court also will not consider the documents attached to

6  plaintiff's response to Pite Duncan's motion.  The court is not

7  considering those attachments primarily because they have no

8  bearing on the standing issue.  In fact, that response only

9  specifically references two of the attachments thereto.  It

10 mentions a transcript from an April 14, 2005, status hearing in

11 Alpha Mega's Nevada bankruptcy, and a statement of accounting filed

12 in that proceeding.[5]  Resp. (doc. 201) at 2.

13     However, the court grants Pite Duncan's RJN pursuant to Fed.

14 R. Evid. 201 (doc. 191).  To the extent necessary to resolve the

15 motions before, the court will consider the 17 exhibits attached

16 thereto.  Those exhibits fall into two categories.  The first are

17 documents pertaining to the two related bankruptcy actions, the

18 "Alpha Mega" bankruptcy filed in the United States Bankruptcy Court

19 for the District of Nevada and the "Bing Four" bankruptcy filed in

20 the United States Bankruptcy Court for the District of Arizona.

21 See RJN (doc. 191) at 2.  The second are "official records of

22 Maricopa County" pertaining to 2258 East Alpine, Mesa, Arizona

23

24       [5]     Plaintiff did not specifically request the court to take judicial
25 notice of any of attachments to his response.  Even if it were inclined to take
   judicial notice of such attachments, it could only consider those matters of public
   record to show "that a judicial proceeding occurred or that a document was filed
26 in another court case[.]"    See Mitchell v. Branham, 2008 WL 3200666, at *8
   (S.D.Cal. 2008) (citing, inter alia, Wyatt v. Terhune, 315 F.3d 1108, 1114 & n. 5
27 (9th Cir. 2003)).  The court could not, as plaintiff suggests, take judicial notice
   of findings of fact from that bankruptcy.  See id. (Citation omitted).  Nor could
   the court "take judicial notice of any matter that it is in dispute."  See id.
28 (citations omitted).

- 5 -

("the Alpine property) – the property which is the subject of this litigation.  Id. at 1 and 2.  As it did in Spain I, the court grants this request because it does "not require the acceptance of facts subject to reasonable dispute," and the facts thereon "are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Spain I, 2009 WL 752610, at *3 (internal quotation marks and citations omitted).

For those same reasons, the court also takes judicial notice, as Poli & Ball requests, of Aurora Management, LLC's state court lawsuit against BOA, and defendants James Shively's and Poli & Ball's representation of BOA in that action and in Alpha Mega's bankruptcy in Nevada.  See Mot. (doc. 138) at 4.

Similarly, consistent with the Ninth Circuit's relatively expansive view of the incorporation by reference doctrine as it pertains to pleadings, as necessary, the court also will consider documents to which the SAC refers, and the documents attached thereto.  See U.S. v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) (citations omitted) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims."); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a party of the pleading for all purposes.").  Having clarified the scope of the submissions which it will consider, the court turns to the substance of these motions.

**_I. "Request for Reconsideration"_**

On June 10, 2008, plaintiff filed a "Request for Reconsideration" (doc. 154) of Spain I, which was filed on March

18, 2008 (doc. 119), which the court denied for failure to comply with LRCiv 7.2(g)(1).  Spain II, 2008 WL 2328358, at *2.  That Rule, which the court discussed at some length in Spain II, details the form, content and procedure for a reconsideration motion. Given this background, plaintiff can hardly claim that he was unaware of the necessity of complying with LRCiv 7.2(g)(1) when he filed this most recent reconsideration "request."

Besides not being in the proper form, this reconsideration "request" is not timely.  Subsection(2) of LRCiv 7.2(g) requires that "[a]bsent good cause shown, any motion for reconsideration *shall* be filed no later than ten (10) days after the date of the filing of the Order that is the subject of the motion."  LRCiv 7.2(g)(2) (emphasis added).  This reconsideration motion was not filed until June 10, 2008 -- 83 days after the entry of Spain I. Obviously, then, it was not timely.  Thus, the court denies plaintiff's motion for reconsideration (doc. 154) for failure to comply with LRCiv 7.2.

## II.  Rule 12 Motions

The moving defendants all are either specifically seeking dismissal for lack of standing, or joining in motions which seek that relief.  Thus, as explained in Spain I, although some defendants assert other bases for dismissal, "[t]he court must analyze standing first because it 'is the threshold issue of any federal action[,]'" in that it goes to the core of the court's subject matter jurisdiction.  Spain I, 2008 WL 752610, at *2 (quoting Local Nos. 175 & 505 Pension Trust v. Anchor Cap., 498 F.3d 920, 923 (9th Cir. 2007)).  The general principles regarding Rule 12(b)(1) jurisdictional challenges and standing set forth in

- 7 -

1   Spain I will continue to guide the court's analysis herein, see id.
2   at *5, although the issue of statutory as opposed to Article III
3   standing has arisen.

4        As did the parties, in Spain I the court limited its inquiry
5   to Article III standing.  Now, however, for the first time BOA is
6   asserting that plaintiff cannot satisfy RICO's standing
7   requirement, 18 U.S.C. § 1964(c).  See Mot. (doc. 156) at 3.  This
8   argument puts the proverbial cart before the horse however.  As a
9   threshold matter, the court must decide whether plaintiff has
10  established standing under Article III.  The court must proceed in
11  this way because in this Circuit, "the question of statutory
12  standing is to be resolved under Rule 12(b)(6), once Article III
13  standing has been established."  Canyon County v. Syngenta Seeds,
14  Inc., 519 F.3d 969, 974 n. 7 (9th Cir.) (citation omitted), cert.
15  denied, 129 S.Ct. 458, 172 L.Ed.2d 327 (2008).  In other words,
16  statutory standing under RICO is not jurisdictional.  "Statutory
17  standing is the second part of the inquiry."  Salmon Spawning &
18  Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008)
19  (citation omitted).  Thus, although BOA focuses the bulk of its
20  argument on RICO standing, the court necessarily will examine first
21  whether plaintiff Spain has standing under Article III.  Absent an
22  initial showing that plaintiff Spain has Article III standing, the
23  court need not reach BOA's statutory standing argument.

24       The court assumes familiarity with the prior proceedings in
25  this action, as well as the related actions.  Two aspects of Spain
26  I bear repeating at this juncture though.  First, as noted at the
27  outset, the SAC contains many of the same allegations as did the
28  FAC.  Therefore, the court adopts as if fully set forth herein the

1  factual summary in _Spain I_.  _See Spain I_, 2008 WL 752610, at *3.

2       Second, in _Spain I_ the court found that the FAC did not

3  adequately plead standing because it was "completely void of any

4  allegations that plaintiff ha[d] a 'personal stake' in the outcome

5  of this litigation."  _Id._ at *5.  The court explained:

6           The requisite personal stake is missing because
            the only alleged injuries seem to be loss of the
7           Alpine property, the payment of interest, and the
            payment of attorneys fees. . .  However, those
8           injuries were suffered, if at all, by Aurora,
            Alpha Mega and/or Bing Four, not by plaintiff. . .
9           Further, insofar as the court is able to discern,
            there is nothing in the FAC connecting plaintiff to
10          those entities, much less in such a way as to confer
            standing upon him.
11

12 _Id._ (internal quotation marks and citations omitted).  In _Spain I_,

13 the court rejected on several grounds plaintiff's position that he

14 had an "ownership interest in Aurora Management."  _Id._ at *6

15 (internal quotation marks and citations omitted).

16      Now, plaintiff is changing his tack.  Instead of asserting an

17 ownership interest in Aurora Management, the SAC alleges that

18 plaintiff has an ownership interest in the Alpine property itself.

19 Defendants' alleged interference with that property interest forms

20 the basis for plaintiff's RICO claims.

21      More specifically, plaintiff alleges that defendants

22 "wrongfully . . . and no less than fraudulently convert[ed] [the

23 Alpine] Property belonging to [him] . . . to their own use thereby

24 depriving him of his ownership rights and beneficial use of the

25 property."  SAC (doc. 150) at 8-9, ¶ 12.  Along those same lines,

26 plaintiff further alleges that "Defendants knew, or reasonably

27 should have known that the [Alpine] property they were attempting

28 to sell belongs to [him]."  _Id._  As plaintiff repeatedly alleges,

that claimed ownership interest arises because he is "**holder of a note, a warranty deed and a beneficiary in due course on th[at] property**[.]" Id. at 4, ¶ 5 (emphasis in original).  Plaintiff therefore alleges that unless he prevails in this action, "**he will be directly aggrieved through deprivation of property interest, money interest and equitable interest**." Id. (emphasis in original) (citation omitted).

In making these allegations, plaintiff cites to an "affidavit" submitted in Spain I wherein, based upon a note and a Warranty Deed attached thereto, he avers, "I have an ownership in Aurora Management." See  Doc. 88 at 2, ¶ 3.  Significantly, however, the affidavit itself does not mention the Alpine property at all.  Nor does the note refer to that property in any way.  The note contains only a general promise by Aurora Management Ltd, "to pay to the order of ABS PROPERTY TRUST & B. Spain Individualy [sic]" the amount of $30,075.15.  Id. at 5.  By contrast, the Warranty Deed explicitly refers to the Alpine property.  That Deed, dated August 12, 2006, but not recorded until February 12, 2007, "convey[s]" an "[u]ndivided one-[h]alf interest in" the Alpine property.  Id. at 6.  The designated "GRANTEE" of that conveyance is "ABS PROPERTY TRUST *B.Spain, Beneficiary*[.]" Id. (emphasis added).

The SAC broadly alleges that because plaintiff "holds a note and warranty deed, he has met the injury in fact requirement of standing.  See SAC (doc. 150) at 9, ¶ 12.  Further, plaintiff sweepingly alleges that he has "show[n] standing by meeting the three prongs of Injury in Fact, causation, and redressability[.]" Id. at 4, ¶ 6 (citation omitted).  Plaintiff makes the equally

1   broad allegation that he "satisfies his burden of 'clearly and

2   specifically setting forth fact [sic] sufficient to satisfy . . .

3   art. III['s]' standing requirements per <u>Whitmore v. Arkansas</u>, 495

4   U.S. 149, 155 . . . (1990)). <u>Id.</u> at 4, ¶ 7.  Simply alleging that

5   standing has been shown does not make it so, however.  Moreover,

6   the court will "not assume the truth of [these] legal conclusions"

7   just because plaintiff attempts to "cast [them] in the form of

8   factual allegations." <u>See</u> <u>Marceau v. Blackfeet Housing Authority</u>,

9   540 F.3d 916, 919 (9th Cir. 2008) (internal quotation marks and

10  citation omitted), *petition for cert. filed* (Nov. 19, 2008) (No.

11  08-881).

12      Reiterating their standing arguments in <u>Spain I</u>, basically

13  defendants argue that because plaintiff has no ownership interest

14  in the Alpine property, he does not have the requisite "personal

15  stake in the outcome" of this litigation.  <u>See</u> <u>Spain I</u>, 2008 WL

16  752610, at *5 (internal quotation marks and citations omitted).

17  More particularly, defendants adhere to the position that the

18  alleged injuries in the form of loss of the Alpine property, the

19  payment of interest and the payment of attorney's fees are injuries

20  which were sustained, if at all, by Aurora Management, Alpha Mega

21  and/or Bing Four – not by plaintiff.

22      The moving defendants further contend that to the extent

23  plaintiff Spain is relying upon the promissory note to show his

24  standing, at best, that note shows he was only a creditor of Aurora

25  Management.  Likewise, as the Warranty Deed states, defendants

26  contend that at best plaintiff was a trust beneficiary thereunder.

27  Neither his purported status as a creditor or as a trust

28  beneficiary are sufficient, defendants argue, to confer standing

1  upon plaintiff.

2      Plaintiff's attempt to show an equitable interest in the

3  Alpine property based upon copies of 30 checks attached to the SAC

4  is similarly unavailing, defendants assert.  Those checks are

5  insufficient to show such an interest because they are not drawn on

6  plaintiff's account.  Rather, those checks are drawn on the "West

7  Macko, Inc. Trust Account[.]"  See SAC (doc. 151), attachments

8  thereto.  In sum, defendants contend that plaintiff has not met his

9  burden of establishing standing to pursue his RICO claims by

10  relying upon the promissory note, the Warranty Deed, or the checks.

11  The court agrees.

12      Despite plaintiff's bald assertions to the contrary, the

13  promissory note does not establish that he has an ownership

14  interest in the Alpine property.  In the first place, as noted

15  earlier, that note does not mention the Alpine property, leaving

16  the court and the defendants to speculate as to the basis for this

17  obligation.  Moreover, it cannot be ascertained whether or not that

18  note has been paid.  That note had a maturity date of December 30,

19  2001, although it also states that it "is to automatic renue [sic]

20  every Five years until paid."  Doc. 88 at 5.  The SAC is silent as

21  to whether that note has been renewed or satisfied.

22      As Pite Duncan astutely points out, if that note has been

23  paid, then any rights plaintiff may have had thereunder are

24  extinguished.  Hence, that note cannot support plaintiff's claimed

25  ownership interest in the Alpine property and, in turn, plaintiff's

26  allegation that he has standing.  If, on the other hand, the note

27  has not been paid, defendants are not the proper parties; rather,

28  plaintiff should be seeking recourse against Aurora Management.

1   Cf. Fore v. Bles, 149 Ariz. 603, 604, 721 P.2d 151, 152 (Ariz. Ct.
2   App. 1986) (citing A.R.S. § 47-3301) (emphasis added) ("The holder
3   of an instrument may sue in his own name on the instrument.")
4   Consequently, this note, especially lacking any context, does not
5   show that plaintiff has an ownership interest in the Alpine
6   property, which could, in turn, demonstrate his standing.[6]

7       Plaintiff fares no better by relying upon the Warranty Deed to
8   establish an ownership interest in the Alpine property, and hence,
9   ultimately, standing.  Despite what plaintiff might believe, that
10  Deed did not convey any portion of the Alpine property to him
11  individually.  It is plain from the face of the Warranty Deed that
12  the property was conveyed to the "ABS PROPERTY TRUST[,]" and to
13  plaintiff solely in his capacity as trust "Beneficiary[.]"  Doc. 88
14  at 6.  However, "the beneficiary of a trust generally is not the
15  real party in interest and may not sue in the name of the trust."
16  Orff v. United States, 358 F.3d 1137, 1148 (9th Cir. 2004) (internal
17  quotation marks and citation omitted).  Thus, as a trust
18  beneficiary, plaintiff lacks standing to pursue claims on behalf of
19
20  ────────────
21  [6]     The court is fully aware of defendants' uniform reliance upon Stein v.
    United Artists Corp., 691 F.2d 885 (9th Cir. 1982), as the sole legal authority for
    their argument that plaintiff does not have standing based upon his purported
22  status as a creditor under the note.  Stein's applicability to the present case is
    highly doubtful however given some obvious distinctions.  The Ninth Circuit in
23  Stein was examining, inter alia, whether individuals had standing under the
    antitrust laws, which incidentally includes a provision nearly identical to RICO's
    standing requirement.  As previously explained though, statutory standing and
24  Article III standing involve different inquiries.
        Furthermore, although the Court in Stein made passing reference to
25  plaintiffs' status as "creditors or guarantors[,]" the Court's analysis was
    dominated by Mr. Stein's status as the primary shareholder and officer of the
26  corporation whose rights he was seeking to vindicate.  Focusing on the risk of
    double recovery, the Ninth Circuit held that plaintiffs lacked standing to pursue
27  individual antitrust claims.  Given that this is not an antitrust action, and there
    is no potential for double recovery here, Stein is inapposite.  As explained above,
28  however, plaintiff Spain still cannot rely upon the promissory note by Aurora
    Management to show that he has an ownership interest in the Alpine property.

1   the trust.

2      Poli & Ball make the additional argument, which the other

3   moving defendants adopt, that because the warranty deed is a

4   mortgage, in that it does not include the statutorily required

5   affidavit of legal value,[7] no legal or equitable title was conveyed

6   to plaintiff by that deed.  Put differently, defendants equate lack

7   of title with lack of standing.

8      This aspect of defendants' argument is not persuasive though.

9   Assuming *arguendo* that the Warranty Deed created a mortgage, as

10  defendants suggest, then lien rights to the Alpine property would

11  arise thereunder.  And, depending upon the nature of those rights,

12  it is possible that plaintiff could have the requisite personal

13  stake in the outcome of this litigation.  The fact remains,

14  however, that to the extent the Warranty Deed creates any lien

15  rights, those rights belong to the Trust, not to plaintiff, the

16  trust beneficiary.  So, once again, the trust is the real party in

17  interest, and plaintiff's status as a trust beneficiary does not

18  suffice to establish an ownership or other interest in the Alpine

19  _____

20      [7]    Arizona law requires that "[e]ach deed evidencing a transfer of title
    . . . shall have appended at the time of recording" an "[a]ffidavit of legal
21  value[.]" A.R.S. § 11-1133(A) (West Supp. 2008).  If a deed is statutorily exempt
    from that affidavit requirement, that exemption must be "note[d] . . . on the face
    of the instrument at the time of recording[.]" A.R.S. § 11-1134(C) (West 2001).
22  Here, the Warranty Deed contains such a notation -- "ARS 11-1134 B-1" –
    handwritten on the face of the Deed.  Doc. 88 at 6.  That statute provides in
23  relevant part that the affidavit of legal value and related fee "do not apply to
    a transfer of title . . . [s]olely in order to provide or release security for a
    debt or obligation[.]" A.R.S. § 11-1134(B)(1) (West 2001).
24      The relevance of that exemption here, as Poli & Ball point out, is that
    because no affidavit of legal value was required when recording the Warranty Deed,
25  it is a mortgage.  Further, because Arizona is a lien theory state, defendants
    reason that this "mortgage" does not convey title - legal or equitable.  <u>See</u>
26  <u>Berryhill v. Moore</u>, 180 Ariz. 77, 88, 881 P.2d 1182, 1193 (Ariz. Ct. App. 1994)
    (citations omitted)("Arizona is a lien theory state.  A mortgage creates lien
27  rights in the mortgagee, but it passes neither legal nor equitable title to the
    mortgagee.")  Indeed, "A.R.S. section 33-703 makes it clear that a mortgage does not
28  entitle the mortgagee to possession of the property absent express terms of the
    mortgage."  <u>Id.</u> (footnote omitted).

1  property, regardless of whether or not title was conveyed through
2  that Deed.

3       Plaintiff's response to Poli & Ball's dismissal motion is
4  wholly non-responsive.  Moreover, despite this court cautioning
5  plaintiff against using a "vituperative tone," Spain II, 2008 WL
6  2328358, at *3, he has persisted in doing so.  In this particular
7  response, plaintiff casts disparaging remarks against Poli & Bell's
8  counsel.  For example, plaintiff needlessly and inappropriately
9  chides Mr. Messing by "[s]ubmitt[ing]" that "[i]f [he] can not
10  understand a sixty-three . . . point statement of this case, [Mr.]
11  Messing lacks the mental acuity to perform the work of a lawyer."
12  Resp. (doc. 141) at 5.  Remarkably, plaintiff further asserts that
13  Mr. Messing is "harass[ing]" him when, arguably, it is the other
14  way around.  As the record amply demonstrates, at this point,
15  plaintiff's repetitive and non-responsive filings border on
16  harassment.

17       In plaintiff's other responses he uniformly states that the
18  SAC is "[r]eplete with examples of standings[,]" although he
19  deliberately limits his references to the documents previously
20  discussed.  See, e.g., Resp. (doc. 183) at 1 and 2; and Resp. (doc.
21  201) at 1 and 2.  As fully explained above, however, none of those
22  documents show that plaintiff actually "held [an] ownership
23  interest in the [Alpine] property."  See id. at 1.  Indeed,
24  plaintiff's own allegations in the SAC undermine his ownership
25  argument in that he alleges that "[i]n 1988 Aurora Management
26  acquired the [Alpine] property[.]" SAC (doc. 150) at 9, ¶ 13.
27  Nowhere in that complaint does plaintiff allege that he himself
28  acquired the Alpine property.  In any event, citing to In re

1   Sherman, 441 F.3d 794 (9th Cir. 2006), amended and superseded by,
2   491 F.3d 948 (9th Cir. 2007), plaintiff further contends that the
3   documents discussed above "show[ ] that he holds a pecuniary
4   interest in the [Alpine] property," and that is all Sherman
5   requires to demonstrate standing.  Resp. (doc. 183) at 2.

6        Plaintiff misconceives the scope of the Court's holding in
7   Sherman however.  One of the issues on appeal in Sherman was
8   whether the Securities and Exchange Commission ("SEC") had standing
9   to file a motion to dismiss a bankruptcy petition.  The Court held
10  that the SEC did have standing because it was "a 'creditor' for
11  purposes of the Bankruptcy Code" with respect to a disgorgement
12  judgment.  Sherman, 491 F.3d at 957.  Not only did Sherman involve
13  the definition of a "creditor" under the Bankruptcy Code - clearly
14  not an issue here -- but there the SEC was asserting claims against
15  a debtor.  The SEC was not, as plaintiff is attempting to do,
16  asserting claims on behalf of a debtor, i.e. Aurora Management.
17  Thus, Sherman is inapposite to the standing issue presently before
18  this court.

19       To conclude, even in its most recent permutation, plaintiff's
20  complaint does not sufficiently allege standing.  Reiterating,
21  plaintiff cannot establish standing based upon the promissory note
22  because there is no indication on that note that it pertains in any
23  way to the Alpine property.  Further, the SAC does not allege
24  whether or not that note has been satisfied.  The Warranty Deed
25  also does not support a finding that plaintiff has standing here
26  because on its face that Deed shows that plaintiff is a trust
27  beneficiary and, as such, is not the real party in interest.  Any
28  rights which that Deed may establish in the subject property are

rights belonging to the ABS Property Trust -- not to plaintiff.  To the extent plaintiff believes that he has been deprived of his rights as a trust beneficiary, then he has sued the wrong parties.

At the end of the day, at most, the SAC, just like the FAC, alleges injuries which "were suffered, if at all, by Aurora, Alpha Mega and/or Bing Four, not by plaintiff." Spain I, 2008 WL 752610, at *5 (internal quotation marks and citation omitted).  Thus, plaintiff has not alleged an injury which is "unique" to him, one which is "particularized" in that "'it affect[s] [him] in a personal and individual way." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 n.1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Plaintiff's failure to "'alleg[e] specific facts sufficient to satisfy the standing elements[]'" id. (quoting Loritz v. U.S. Court of Appeals for Ninth Circuit, 382 F.3d 990, 992 (9th Cir. 2004)) (emphasis added by Spain I), means that this court does not have subject matter jurisdiction.  The court, therefore, cannot proceed to the merits of the remaining pending motions. Accordingly, it denies those motions as moot, as set forth at the conclusion of this decision.

Additionally, the court's docket sheet reflects that three defendants, Quality Loan Service Corporation, Paul M. Levine and Matthew A. Silverman, were served with, inter alia, the SAC.  Those three defendants filed and served an answer (doc. 198), but they did not make a motion as to the SAC.  However, [b]ecause this court has 'both the power and the duty to raise the adequacy of [a plaintiff's] standing sua sponte[,]" it will also consider that issue as to these non-moving defendants.  See id. at *7 (quoting Bernhardt v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir.

1  2002)).  "When the court does that, obviously it comes to the same

2  conclusion as it did with respect to the . . . moving defendants:

3  plaintiff has not sufficiently alleged standing."  See id.

4  Accordingly, the court hereby *sua sponte* dismisses the SAC as to

5  defendants Quality Loan, Levine and Silverman.  Likewise, the court

6  *sua sponte* dismisses the SAC as to the seven remaining defendants

7  were served with the SAC, but have not answered, moved or otherwise

8  appeared: Debbie Mione; Lita Dungo; Dolly Hodges; Toni Wade; Roger

9  Vasquez; Raymond O. Wisely; and James T. Rayburn.

10      Finally, defendant purports to be asserting claims against 100

11  fictitious "John and Jane Doe[]" defendants.  SAC at 3.  "Not

12  surprisingly, none of the[se] [fictitious] defendants were

13  served[.]"  See Woodbeck v. United States, 2008 WL 312104, at *3

14  (D.Ariz. Jan. 31, 2008) (internal quotation marks and citation

15  omitted).  "Indeed it is virtually impossible to serve Doe

16  Defendants because of their anonymity."  Id. (internal quotation

17  marks and citation omitted).  As this court has previously

18  instructed:

19          Generally, the use of anonymous type appellations
           to identify defendants is not favored . . . In fact,
20         Rule 10(a) of the Federal Rules of Civil Procedure
           requires the plaintiff to include the names of the
21         parties in the action. . .  By the same token though,
           the Ninth Circuit has [long] held that where
22         identity is unknown prior to the filing of a
           complaint, the plaintiff should be given an
23         opportunity through discovery to identify the
           Unknown defendant, unless it is clear that discovery
24         would not uncover the identities, or that the
           complaint would be dismissed on other grounds.
25

26  Id. (internal quotation marks and citations omitted).  Here, as

27  discussed above, dismissal is appropriate because plaintiff lacks

28  standing.  "Thus, it would be futile to give [plaintiff] the

opportunity to identify and serve the unnamed Doe defendants[.]"
See id. (internal quotation marks and citation omitted).  Thus, the
court *sua sponte* dismisses this action as against the 100 John and
John Doe defendants.

### *Conclusion*

For the reasons set forth above, IT IS ORDERED that:

(1) Plaintiff's "Request for Reconsideration of Order Dated 17
March, 2008" is DENIED (doc. 154);

(2) Plaintiff's "Motion for reconsideration of motion to
enlarge time" (doc. 237) is DENIED;

(3) the Poli & Ball defendants' "Motion to Dismiss, or in the
Alternative, for More Definite Statement" (doc. 138), joined
by NBI (doc. 146), BOA (doc. 156) at 3, and EMC (doc. 158), is
GRANTED insofar as that motion is premised upon lack of
subject matter jurisdiction because plaintiff has not
sufficiently alleged standing, but DENIED in all other
respects;

(4) the defendant BOA's "Motion to Dismiss Second Amended
Complaint" (doc. 156), joined by Pite Duncan (doc. 188) and
David W. Huston (doc. 194), is GRANTED insofar as that motion
is premised upon lack of subject matter jurisdiction because
plaintiff has not sufficiently alleged standing, but DENIED in
all other respects;

(5) the NBI defendants' "Joinder in Bank of America's Motion
to Dismiss (Document #157) is GRANTED;

(6) the Pite Duncan defendants' "Motion to Dismiss for Lack of
Subject Matter Jurisdiction (Standing) Or, Alternatively, for
Failure to State a Claim" (doc. 190), joined by NBI (doc.
192), Poli & Ball (doc. 193), EMC (doc. 196) and Dean Werner
(doc. 197), is GRANTED insofar as that motion is premised upon
lack of subject matter jurisdiction because plaintiff has not
sufficiently alleged standing, but DENIED in all other
respects;

(7) the NBI defendants' "Motion for Summary Judgment[]" doc.
146), joined by EMC (doc. 158), is DENIED as moot;

(8) the EMC defendants' "Motion to Dismiss Second Amended
Complaint Pursuant to Rule 12(B) [sic](6)" (doc. 159), joined
by NBI (doc. 161) at 2, ¶ 2, is DENIED as moot;

(9) the EMC defendants' "Request for Summary Disposition[]"
(doc. 204) is DENIED as moot;

1   (10) plaintiff's "Motion to Compel" (doc. 206) is DENIED as
    moot;

2

3   (11) the court *sua sponte* dismisses the SAC as to Quality Loan
    Service Corporation; Paul M. Levine; Matthew A. Silverman;
    Debbie Mione; Lita Dungo; Dolly Hodges; Toni Wade; Roger

4   Vasquez; Raymond O. Wisely; and James T. Rayburn; and as to the
    100 John and Jane Doe defendants.

5

6       In light of these rulings, the court further ORDERS that

7   plaintiff's Second Amended Complaint (doc. 150) is DISMISSED WITH

8   PREJUDICE for lack of subject matter jurisdiction.  The Clerk of the

9   Court is directed to enter JUDGMENT in favor of defendants and

10  terminate the case.

11      DATED this 24rd day of February, 2009.

12

13

14  _____
    Robert C. Broomfield

15  Senior United States District Judge

16

17

18  Copies to counsel of record and plaintiff *pro se*

19

20

21

22

23

24

25

26

27

28