WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

B. Spain,                          )
                                   )
              Plaintiff,           )     No. CIV 07-0308-PHX-RCB
                                   )
         vs.                       )              O R D E R
                                   )
EMC Mortgage Company,              )
et al.,                            )
                                   )
              Defendants.          )
_____)

     The primary issue currently before the court is the
propriety of entering a pre-filing order against plaintiff
*pro se*, B. Spain.  In <u>Spain v. EMC Mortgage Co.</u>, 2008 WL
752610 (D. Ariz. March 18, 2008) ("<u>Spain I</u>"), the first of
four comprehensive orders issued in this case, the court
explicitly warned plaintiff that:

          Given his numerous filings, most of them wholly
          without merit, coupled with the tone and form of
          those filings, [he] [wa]s dangerously close to
          crossing the line from permissible use of the
          judicial process to flagrant abuse[.]

<u>Id.</u> at *8.  Plaintiff Spain did not heed that warning or

1   subsequent ones.   Instead, plaintiff's "repeated attempts

2   . . . to misuse the courts" have resulted in, among other

3   things, the "needless[] squander[ing]" of judicial and other

4   resources.   See O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir.

5   1990).   Consequently, as fully discussed below, the court

6   finds ample justification for the entry of a pre-filing order

7   against plaintiff Spain.

8                                 ***Background***

9   ***I.   The Bankruptcy Case***

10      Well before commencing this action, plaintiff Spain had

11   "extensive involvement" as "a claimant in a District of

12   Arizona bankruptcy proceeding . . . span[ning]  more than a

13   decade."[1]  Spain I, 2008 WL 752610, at *1.  That bankruptcy

14   had its genesis in a 1978 judgment of dissolution entered by

15   the Superior Court in Maricopa County.   As part of that

16   judgment, the Superior Court awarded several properties

17   located in Creede, Colorado ("Colorado properties') to Norma

18   J. Hurt.   See Eagleburger I, Doc. 92 at 1; and Eagleburger

19   II, 2009 WL 307280, at *1.   In 1985, Ms. Hurt filed for

20   bankruptcy in the District of Arizona.   Eagleburger II, 2009

21   WL 307280, at *1.

22      In Eagleburger II, Judge Campbell outlined plaintiff

23   Spain's involvement as a claimant in that bankruptcy action:

24           On April 3, 1990, the bankruptcy court issued an

---

[1]    In addition to that bankruptcy action, prior to the commencement of the
present action, plaintiff commenced two other federal district court actions:
Spain v. Eagleburger Group, No. CV 06-0712-PHX-ROS ("Eagleburger I"); and Spain v.
Eagleburger Group, No. CV-08-1089-PHX-DGC ("Eagleburger II").   Pursuant to Fed. R.
Evid. 201, this court takes judicial notice of all orders issued in the bankruptcy
case, and in Eagleburger I, and Eagleburger II.

order approving a stipulated settlement agreement disposing of all claims against the bankruptcy estate ("Settlement Agreement"). *See In re Norma Hurt*, No. 85-3802-PHX-RGM, Adv. No. 87-199 (Bankr.D.Ariz. Apr. 3, 1990). Spain and other claimants appealed the bankruptcy court's order, arguing in part that the Settlement Agreement was unenforceable due to misrepresentation and fraud. The order was affirmed. *See In re Hurt*, BAP No. AZ-90-1142/AZ-90-1174 RJMe (BAP 9th Cir. June 1, 1992); *In re Hurt*, No. 92-16538, 1994 WL 224263, 26 F.3d 130 (9th Cir. May 26, 1994), *cert. denied sub nom., Kachina Plywood, Inc. v. Hurt*, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), and *Pace v. Hurt*, 514 U.S. 1098, 115 S.Ct. 1829, 131 L.Ed.2d 749 (1995).

In January 2003, Bankruptcy Judge James Marlar confirmed the bankruptcy estate's sale of the Colorado Properties to the City of Creede. *See In re Hurt*, No. B-85-03802-JMM (Bankr.D.Ariz. Jan. 31,2003). ITNX, Inc., an entity allegedly controlled by Spain and Pace, appealed from Judge Marlar's confirmation order. The order was affirmed. *See In re Hurt*, BAP No. AZ-98-1532-KPRy (BAP 9th Cir. Sept. 13, 1999); *In re Hurt*, No. 00-15088, 2001 WL 615282, 9 Fed. Appx. 780 (9th Cir. June 5, 2001).

Eagleburger II, 2009 WL 307280, at *1 (footnote omitted).

As this court pointed out in Spain I, after finding that "plaintiff's liens and  encumbrances . . .  placed upon the real properties of [the bankrupt estate of Norma J. Hurt] [were] null and void[,] . . . ,  the Bankruptcy Court . . . enjoined [Spain] from bringing any action or filing, or causing to be filed any lien or claim against the property of [the bankrupt estate][.]"  Spain I, 2008 WL 752610, at *1 (citations and internal quotation marks omitted).  "Plaintiff also signed a settlement agreement which stated the same, and additionally stated that '[Spain agrees] that . . . all objections to the sale of any real properties now pending . . . are waived and withdrawn.'"  Eagleburger I, Doc. 92 at

2:5-7.

## II. *Eagleburger I*

Unwilling to concede defeat, "in 2004 plaintiff commenced a federal court action in Colorado[,]" which eventually was transferred to this district and assigned to Judge Silver. See Spain I, 2008 WL 752610, at *1.  Among the defendants in that case were Bankruptcy Judge Marlar, and counsel who had represented Ms. Hurt in the bankruptcy proceeding.  See Eagleburger II, 2009 W 307280, at *1.  In Eagleburger I, plaintiff Spain alleged that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Eagleburger I, Doc. 92 at 2:21-22.  In particular, plaintiff "alleged that the Colorado Properties were not part of the Settlement Agreement and that the defendants made misrepresentations and filed fraudulent documents in the Bankruptcy Case."  Eagleburger II, 2009 WL 307280, at *1 (citation omitted).  Plaintiff "further alleged that Judge Marlar knowingly approved the fraudulent Settlement Agreement in confirming the sale of the Colorado Properties."  Id. (citation omitted).

Judge Silver dismissed that case for failure to state a claim "on the ground that Spain's claims could have been raised in the Bankruptcy Case and were therefore barred by the doctrine of res judicata."  See id. (citation omitted). Thereafter, plaintiff moved to vacate that order because supposedly it was "void for lack of jurisdiction." Eagleburger I, Doc. 96 at 1:28 - 2:1.  Because plaintiff did "not explain how th[at] Court lack[ed] jurisdiction[,]" Judge

1    Silver denied plaintiff's motion to vacate.  Id. at 2:3-6.

2         Plaintiff Spain responded by filing a motion to

3    disqualify Judge Silver.  See id., Doc. 97.  Judge Silver

4    denied that motion, explaining that "[t]he Court has already

5    entered judgment against Plaintiff, dismissed the action and

6    complaint, and denied [his] motion to reopen the case and

7    vacate the dismissal order."  Id., Doc. 98 at 1:20-21.  Judge

8    Silver unequivocally stated:  "At this point, no further

9    pleadings or motions in this Court are allowed."  Id.,at

10   1:20-22.  She therefore denied "as moot" plaintiff's motion,

11   and directed him to "not file any more motions in th[at]

12   Court, as the case is closed."  Id. at 23-24.  Judge Silver

13   also "ordered . . . the Clerk of the Court . . . not to

14   accept further motions or pleadings in th[at] case."  Id. at

15   2:3-4 (emphasis omitted).

16   ***III.  Eagleburger II***

17        The foregoing did not deter plaintiff Spain from

18   continuing to litigate with respect to the bankruptcy case.

19   Evidently dissatisfied with the outcome in Eagleburger I,

20   plaintiff "fil[ed] a complaint against Judge Silver and all

21   defendant's named in [her] case with the exception of [Ms.]

22   Hurt."  Eagleburger II, 2009 WL 307280, at *2 (citation

23   omitted).  Plaintiff Spain asserted "RICO claims based on an

24   alleged conspiracy between Defendants to deprive Spain of his

25   purported ownership of the Colorado properties[,]" which were

26   the subject of the Hurt bankruptcy.  Id. (citation omitted).

27   Defendants and plaintiffs alike filed a host of motions in

28   that case.

1  Finding that the complaint before him was "nearly

2 identical to the second amended complaint [("SAC")]" in

3 Eagleburger I, and that Judge Silver had "dismissed the [SAC]

4 on the merits, and final judgment was entered in favor of

5 Defendants and against Spain[,]" Judge Campbell held that res

6 judicata barred the claims before him.  See id. (citations

7 omitted).  Judge Campbell also dismissed the claims against

8 Judges Silver and Marlar on judicial immunity grounds.  See

9 id. at *3.  Additionally finding that judicial immunity would

10 bar plaintiff's proposed section 1983 claims against those

11 two Judges, Judge Campbell also denied plaintiff's motion to

12 amend his complaint.  Id.

13  Moreover, Judge Campbell granted the motion by Judges

14 Silver and Marlar "enjoin[ing] Spain from filing in th[a]t

15 Court, absent prior permission, any suit against Defendants

16 concerning the Colorado Properties."  Id. at *4 (citing 28

17 U.S.C. § 1651).  Judge Campbell soundly reasoned:

18  Spain's claims relating to the Colorado Properties
   have been repeatedly denied. . . . With each
19  judicial failure, [Spain] file[s] the next cause of
   action, creating a snowballing effect by naming the
20  same defendants and adding attorneys and judges [he
   holds] responsible for [his] defeat. . . .  Spain's
21  claims are not only numerous, but patently without
   merit. . .
22

23 Id. (citations, internal quotation marks and footnote

24 omitted).  Judge Campbell then directed the Clerk of the

25 Court to terminate that action.  Id. at *5, ¶ 6.

26 **_IV.  The Present Case_**

27  **_A.  Spain I_**

28  "Slightly more than a month" after Judge Silver barred

- 6 -

1  plaintiff from further filings in Eagleburger I, plaintiff

2  Spain filed the present action.  Spain I, 2008 WL 752610, at

3  *1 (citation and internal quotation marks omitted).  It was

4  readily apparent to the court that plaintiff's first amended

5  complaint ("FAC") herein, bore a "striking resemblance" to

6  his amended complaint in Eagleburger I.  Id.  "[T]he factual

7  predicate [did] differ[]" between those two complaints in

8  that the Colorado properties were at issue in Eagleburger I,

9  whereas the property at issue here "is located at 2258 East

10  Alpine Drive, Mesa, Arizona ('the  property')[.]"  Id. at *3

11  (citation omitted).  Plaintiff Spain alleged the same legal

12  theory though as he did in Eagleburger I – alleged RICO

13  violations."  See id. at *1.  Indeed, "many parts [of

14  plaintiff's FAC] [we]re identical to his amended complaint"

15  in Eagleburger I.  Id. at *2.  This court found that

16  "similarity" to be "significant because in [Eagleburger I]

17  the court granted defendants' motion for a more definite

18  statement . . . , noting that it was 'an understatement[]' to

19  refer to plaintiff's complaint therein as 'unorganized[.]'"

20  Id. (citation omitted).  This court found "the same" to be

21  "true here."  Id.

22      Despite "plaintiff's scattershot approach to pleading[,]"

23  and his "lengthy recitations to cases which on their face

24  appear[ed] largely irrelevant[,]" the court did address

25  defendants' standing arguments in Spain I.  Id. at *3.  The

26  court addressed those arguments although it had "serious

27  reservations as to whether the FAC in its current form

28  "perform[ed] the essential functions of a complaint."  Id.

1   (quoting <u>McHenry v. Renne</u>, 84 F.3d 1172, 1180 (9th Cir.

2   1996)).  Plaintiff did not address the standing issue in

3   <u>Spain I</u>.  <u>See</u> <u>id.</u> at *4.  Instead, as to one defense motion,

4   "with no basis," plaintiff simply "respond[ed] that that

5   motion [wa]s ' . . . a substantive and procedural

6   nullity[.]'" <u>Id.</u> (citation omitted).  "Except for asserting

7   different names," that was also plaintiff's response to

8   another defense motion.  <u>Id.</u>  Plaintiff took "a different but

9   equally unresponsive approach" to yet another defense motion.

10  <u>Id.</u>  Plaintiff "devote[d] the bulk" of that response "to

11  arguing that it '[wa]s nothing more and nothing less than a

12  frivolous demurrer[.]'" <u>Id.</u> (citation omitted).

13      After thoroughly discussing why plaintiff's FAC did not

14  sufficiently allege standing, the court found that it

15  "lack[ed] subject matter jurisdiction[,] and so "denie[d] as

16  moot all remaining pending motions[.]" <u>See</u> <u>id.</u> at *5 - *7.

17  Primarily because of "the Ninth Circuit's general reluctance

18  to deny <i>pro se</i> litigants an opportunity to amend, the court

19  [did] allow plaintiff to amend his complaint[]" though.  <u>Id.</u>

20  at *8.  The court cautioned plaintiff, however:

21          Before filing any amended complaint, . . . plaintiff
            would do well to seriously consider the numerous
22          apparent defects discussed in defendants' motions,
            such as the lack of personal jurisdiction by the
23          Ruyle defendants and defendant Huston, and the fact
            that arguably this action is an impermissible
24          collateral attack on prior court proceedings. The
            court stresses that these are just two of the
25          seeming defects, which are too countless to
            enumerate, in the FAC-and two which at first glance
26          it does not appear can be cured by amendment.

27  <u>Id.</u>  The court further advised plaintiff, among other things,

28  that if he "has any doubt as to the pleading requirements

1 under the Federal Rules of Civil Procedure, he can consult,
2 among other sources, the Rule's Appendix of Forms, which are
3 "'intended to indicate the simplicity and brevity of
4 statement which the rules contemplate.'"  Id. (quoting
5 Fed.R.Civ.P. 84).

6      At that point, the court gave plaintiff the first of
7 several warnings pertaining to "the manner" in which he was
8 "conduct[ing] this litigation[.]" Id.  Given his conduct "to
9 date, as well as his extensive prior litigation involvement
10 documented in the record, the court caution[ed] him regarding
11 the use of the courts in a vexatious fashion." Id.
12 Although the court found that "[a]t th[at] juncture the
13 plaintiff ha[d] not engaged in a 'flagrant abuse of the
14 judicial process[,]'" it opined that "[g]iven his numerous
15 filings, most of them wholly without merit, coupled with the
16 tone and form of those filings, plaintiff [wa]s dangerously
17 close to crossing the line from permissible use of the
18 judicial process to flagrant abuse[.]" Id. (quoting Molski,
19 500 F.3d at 1057).  The court further advised plaintiff that
20 it would "not look favorably upon the filing of an amended
21 complaint which does not fully comport with the relevant
22 Federal Rules of Civil Procedure and governing case law."
23 Id.  The Court allowed plaintiff 30 days in which to file and
24 serve his amended complaint.  See id.
25      **B.  *Spain II***
26      Rather than filing and serving an amended complaint as
27 the court allowed, plaintiff "filed a 'motion to vacate[,]'
28 asserting that *Spain I* [wa]s 'facially void[.]'" Spain v. EMC

1  Mortg. Co., 2008 WL 2328358, at *1 (D.Ariz. June 4,
2  2008)("Spain II") (citation omitted).  After defendants
3  promptly responded or joined in responses filed by other
4  defendants, plaintiff filed three additional motions and
5  lodged a SAC with the court, but he did not reply to any of
6  those responses or joinders.  That flurry of motion activity
7  is outlined in Spain II, and incorporated herein by
8  reference.  See id.

9     Partially due to his *pro se* status, this court overlooked
10  the fact that in moving to vacate plaintiff did not rely upon
11  the proper Rule.  See id. at *2.  The court could not so
12  easily overlook the "largely incomprehensible" nature of
13  plaintiff's motion, however.  See id.  Nor could the court
14  overlook the fact that plaintiff  "simply disagree[d] with
15  [this court's] rulings in *Spain I*.  Id.  As this court held,
16  "[p]laintiff's dissatisfaction [wa]s not a proper basis for
17  reconsideration[.]"  See id. (citing cases).  Additionally,
18  plaintiff did not fully comply with LRCiv. 7.2(g)(1) in
19  moving to vacate.  Id.  Accordingly, the court denied
20  plaintiff's motion to vacate.  Id. at *5.

21     Although styled differently, plaintiff filed two other
22  "virtually identical" motions, which the court jointly
23  considered in Spain II.  Basically, plaintiff was seeking an
24  extension of time in which to file his SAC.  In arguing for a
25  "good cause" extension of time, plaintiff vowed that "if an
26  extension of time [wa]s not granted, he w[ould] 'wast[e]
27  *judicial resources and the Court's time*[.]'"  Id. at *3
28  (quoting Resp. (Doc. 136)) (emphasis added).  This court

found "[p]laintiff's ready willingness to 'wast[e] judicial resources and the Court's time[]' [to be] troubling to say the least." Id. (citation omitted).  The court conceded that "[p]erhaps when read in isolation, [it] would be willing to overlook th[at] statement." Id. But, "[w]hen read in conjunction with plaintiff's motion to vacate, with its vituperative tone, the court f[oun]d[] that once again 'plaintiff is dangerously close to crossing the line from permissible use of the judicial process to flagrant abuse[.]'" Id. (quoting Spain I, 2008 WL 752610, at *8).

After carefully examining the four factors pertinent to a finding of excusable neglect, this court held that "because . . . it appear[ed] that plaintiff Spain's delayed filing did not result from deviousness or willfulness," it was "willing to give him some leeway." Id. at *4 (internal quotation marks omitted).  Thus, "the court, in its discretion, grant[ed] plaintiff an extension of time in which to file and serve his SAC." Id. at *5.  Concluding, the court added that "[d]espite [its] leniency this time, plaintiff is forewarned that it will not look so favorably upon similar future motions." Id. (footnote omitted).

### C.  Spain III

In Spain v. EMC Mortg. Co., 2009 WL 464983 (D.Ariz. Feb. 24, 2009) ("Spain III"), this court had before it plaintiff's SAC and "various potentially dispositive motions, which called to mind "the immortal words of baseball sage Yogi Berra . . . , 'This is deja vu all over again.'" Id. at *1 (footnote omitted).  That comment was prompted by the fact

that "[d]espite this court's admonitions and guidance in terms of repleading, plaintiff . . . Spain's SAC b[ore] a striking resemblance to his . . . FAC[.]" <u>Id.</u>  The SAC "appear[ed] to be a slightly shorter 'cut and paste version' of the FAC, suffer[ing] from many of the same infirmities as the FAC." <u>Id.</u> Necessarily then, defendants' reiterated their dismissal arguments pertaining to the FAC.  <u>See</u> <u>id.</u> at *5.

    Before resolving the motions to dismiss, given the numerous and in some instances untimely submissions, the court had to first "clarify the scope" of what it would "consider[] on th[os]e motions." <u>Id.</u> at *2.  The court refused to consider a number of plaintiff's filings including four "replies to a reply," because they were duplicative, violative of the Local Rules, or simply irrelevant.  <u>See</u> <u>id.</u> at *2.   In a similar vein, the court denied plaintiff's motion for reconsideration because he did not comply with LRCiv 7.2.  <u>Id.</u> at *3.  Plaintiff Spain was well aware of "the necessity of complying with" that Rule "which the court discussed at some length in <u>Spain II</u>[.]"  <u>Id.</u>

    Next, the court addressed the parties' respective standing arguments.  In contrast to <u>Spain I</u>, where plaintiff claimed that he had standing by virtue of his "ownership interest in Aurora Management[,]" in <u>Spain III</u> plaintiff sought to establish that he had "an ownership interest in the Alpine property itself."  <u>Id.</u> at *4.   Plaintiff unsuccessfully attempted to allege his ownership interest in the Alpine property by relying upon a "promissory note, [a] Warranty Deed," and copies of 30 checks.  <u>Id.</u> at *6.

1   As to the Warranty Deed, this court explained:

2           Despite what plaintiff might believe, that Deed did
            not convey any portion of the Alpine property to him
3           individually. It is plain from the face of the
            Warranty Deed that the property was conveyed to the
4           "ABS PROPERTY TRUST[,]" and to plaintiff solely in
            his capacity as trust "Beneficiary[.]" Doc. 88 at 6.
5           However, "the beneficiary of a trust generally is
            not the real party in interest and may not sue in
6           the name of the trust." Orff v. United States, 358
            F.3d 1137, 1148 (9th Cir. 2004) (internal quotation
7           marks and citation omitted). Thus, as a trust
            beneficiary, plaintiff lacks standing to pursue
8           claims on behalf of the trust.

9   Id. at *6. In summarizing its holdings, the court reiterated:

10          The Warranty Deed . . . does not support a finding
            that plaintiff has standing here because on its face
11          that Deed shows that plaintiff is a trust
            beneficiary and, as such, is not the real party in
12          interest. Any rights which that Deed may establish
            in the subject property are rights belonging to the
13          ABS Property Trust-not to plaintiff. To the extent
            plaintiff believes that he has been deprived of his
14          rights as a trust beneficiary, then he has sued the
            wrong parties.
15

16  Id. at *8. Consequently, this court found that "[a]t the end

17  of the day, at most, the SAC, *just like the FAC*, alleges

18  injuries which 'were suffered, if at all, by Aurora, Alpha

19  Mega and/or Bing Four, not by plaintiff.'" Id. (quoting Spain

20  I, 2008 WL 752610, at *5 (internal quotation marks and

21  citation omitted)) (emphasis added). So, although the SAC

22  "remain[ed] largely incomprehensible and undeniably

23  confusing[,]" it was "ascertainable . . . that despite

24  amendment, plaintiff . . . failed to cure the fundamental

25  defect of standing." Id. at *6 (citation and internal

26  quotation marks omitted).

27      Significantly, in Spain III plaintiff "persisted in . . .

28  using a vituperative tone," despite this court's earlier

- 13 -

1  caution against such conduct.  See id. at *7 (citation and

2  internal quotation marks omitted).  Plaintiff also "cast[]

3  disparaging remarks against" one of the defense counsel,

4  asserting that that particular lawyer was "harass[ing]"

5  plaintiff.  Id.  This court found that assertion

6  "[r]emarkabl[e]" given that "arguably, it [wa]s the other way

7  around."  Id.  Continuing, the court explained that, "[as]

8  the record amply demonstrates, at this point, plaintiff's

9  repetitive and non-responsive filings border on harassment."

10  Id.  However, in large part because the court was dismissing

11  the SAC with prejudice and directing entry of judgment in

12  defendants' favor, and that the case be terminated, the court

13  saw no need for a pre-filing order at that time.  See id. at

14  *9.

15  ### D.  *Spain IV*

16      Following dismissal of this action with prejudice and

17  entry of judgment in defendants' favor, plaintiff filed a

18  wholly baseless "Motion for New Trial, Rehearing, and

19  Reconsideration[.]"  See Spain v. EMC Mortg. Co., 2009 WL

20  2590100, at *8 (D.Ariz. Aug. 20, 2009) ("Spain IV").  As

21  recounted in Spain IV, plaintiff based that motion upon a

22  "purportedly 'corrected' Warranty Deed[:]"

23      Plaintiff claims that the Warranty Deed upon which
       the court focused in Spain III had a 'typographical
24     error[,] in that it 'was erroneously made out to ABS
       PROPERTY TRUST & B. Spain Beneficiary [,]' rather
25     than to plaintiff as 'an individual[.]' . . . Since
       the issuance of *Spain III*, plaintiff asserts that
26     that 'error has . . . been corrected . . . by
       re-recording the original deed.' . . . Apparently
27     plaintiff re-recorded  the original deed to 'correct
       grantee information[,]' on March 6, 2009-ten days
28     after the issuance of *Spain III*. . . . More

1     particularly, rather than indicating as it did in
      the Spain III record that the 'GRANTEE' was 'ABS
2     PROPERTY TRUST B.Spain,  Beneficiary[,]' the
      Warranty Deed now reads that the 'GRANTEE' is 'ABS
3     PROPERTY TRUST B. Spain, Beneficiary
      Individually[.]' . . . Plaintiff readily admits
4     that he made this 'alteration[.]' . . .

5   Id. at *1(citations and footnote omitted).

6       The court denied plaintiff's motion for a new trial for

7   the patently obvious reason that there had been no trial.

8   See id. at *3.  Likewise, the court denied plaintiff's motion

9   for reconsideration.  Those reasons are incorporated by

10  reference herein, but several bear repeating as they are

11  particularly illustrative of plaintiff's dubious litigation

12  tactics.

13      First, as discussed in Spain IV, "[t]he court disagrees

14  with plaintiff's characterization of the original deed as

15  containing a 'typographical' error."  Id. at *5.  As this

16  court reasoned:

17          This supposed typographical error arises from the
            fact that the conveyance there was to plaintiff in
18          his capacity as a trust 'beneficiary' as opposed to
            'individually.'  Transposing an entire word,
19          especially when those words are spelled quite
            differently, is not a mere typographical error,
20          despite how plaintiff tries to portray it. A
            typographical error would be, for example, the
21          difference between the word 'data' and the word
            'date.' It is easy to see how in transcription those
22          two words inadvertently could be interposed one for
            the other. The same is not true, however, of the
23          words 'beneficiary and 'individually.'

24  Id. Second, as further explained in Spain I:

25          [T]he timing of plaintiff's 'discovery'
            significantly undermines his argument that the
26          original deed was 'erroneously made out.' . . . . That
            'discovery' was not until two and a half years
27          after the Warranty Deed is dated, and after
            plaintiff reviewed Spain III and realized that his
28          trust beneficiary status was disadvantageous to him

in terms of pursuing this litigation. . . . Thus, the court gives no credence to plaintiff's assertion that the original Warranty Deed had a typographical error.

Regardless of the foregoing, what is abundantly clear is that the 'corrected' Deed did not surface until more than a week after the issuance of *Spain III* when apparently plaintiff re-recorded the Deed to reflect the supposedly new grantee information.

Id. at *6 (citations omitted).  As the foregoing readily shows, in pursuing these claims, plaintiff will go to almost any length, including altering documents.

After finding plaintiff's remaining reconsideration arguments to be without merit, the court was "compelled to comment, as it ha[d] previously, upon the manner in which plaintiff has conducted this litigation."  Id. at *7. Essentially, the court found that "since *Spain I*" plaintiff "has done nothing to dispel the court of th[e] view[]" that he was coming "dangerously close to crossing the line from permissible use of the judicial process to flagrant abuse[.]" Id. (citation and internal quotation marks omitted).  The court thus advised the parties that it was "seriously considering entering a pre-filing order . . . precluding any further filings by plaintiff in this action."  Id. at *8. The court suggested that "[s]uch an order also might, perhaps, preclude plaintiff from any further filings generally as to the transaction which is the subject of this lawsuit[.]" Id.

The court allowed plaintiff "15 days from the date of entry of th[at] order in which to file and serve a memorandum of law and any supporting documentation which he deem[ed]

- 16 -

1   appropriate directed to the issue of the propriety of

2   entering a pre-filing order[.]" <u>Id.</u> Defendants were given "10

3   days thereafter to file and serve a response, if any[,]" but

4   the court plainly stated, "[n]o reply shall be permitted

5   unless so directed by the court." <u>Id.</u>

6       The parties timely filed their respective memoranda in

7   accordance with <u>Spain IV</u>.  Blatantly disregarding that order,

8   plaintiff filed two untimely and unauthorized memoranda – a

9   "Supplemental Information to Memorandum of Points and

10  Authorities against the Entry of a pre-filing Order" (Doc.

11  272), and a "Supplement" entitled "<u>B. Spain's memorandum of</u>

12  <u>law objecting to the propriety of Judge Broomfield's entering</u>

13  <u>a pre-filing order **and** motion for a pretrial scheduling</u>

14  <u>conference</u>" (Doc. 273) (bold emphasis added).  The court will

15  not consider the merits of the "Supplemental Information" or

16  the second memorandum of law as they are in direct

17  contravention of <u>Spain IV</u>, but it will briefly address

18  plaintiff's motion for a pretrial scheduling conference.

19      At the same time, the court recognizes that those two

20  untimely and unauthorized filings are relevant to the issue

21  of whether a pre-trial order is necessary in this case.

22  Those two filings reaffirm plaintiff's disregard for the

23  judicial process and, more specifically, orders of this

24  court.  This time instead of waging personal attacks on

25  defense counsel, plaintiff has elected to attack the court in

26  a similarly inappropriate manner.  Furthermore, plaintiff's

27  "Supplemental Information" evinces his declared intent to

28  "'wast[e] judicial resources and the Court's time[.]'" <u>See</u>

1  Spain II, 2008 WL 2328358, at *3 (citation omitted).  That

2  submission consists of nothing more than plaintiff's 20 page

3  "Response to Motion to Enjoin Vexatious Litigation" in

4  Eagleburger II, and Judge Silver's order in Eagleburger I

5  denying plaintiff's motion to vacate therein.

6                              ***Discussion***

7  ***I.  Pre-filing Order***

8        Pursuant to the All Writs Act, 28 U.S.C. § 1651(a),

9  district courts have "the inherent power to enter pre-filing

10  orders against vexatious litigants."  Molski, 500 F.3d at

11  1057 (citation omitted).  That power is not unfettered

12  though.  In De Long v. Hennessey, 912 F.2d 1144 (9th Cir.

13  1990), the Ninth Circuit "outlined four factors for district

14  courts to examine before entering pre-filing orders."  Id.

15  (citation omitted).  "First, the litigant must be given

16  notice and a chance to be heard before the order is entered."

17  Id. (citing De Long, 912 F.2d at 1147).  Second, the district

18  court must compile 'an adequate record for review.'"  Id.

19  (quoting De Long, 912 F.2d at 1148).  These two factors "are

20  procedural considerations – that is, the factors define [a]

21  specific method or course of action that district courts

22  should use to assess whether to declare a party a vexatious

23  litigant and enter a pre-filing order."  Id. at 1057-58

24  (internal quotation marks and citation omitted).

25        The next two factors "are substantive considerations–that

26  is, the[se] factors help the district court define who is, in

27  fact, a 'vexatious litigant' and construct a remedy that will

28  stop the litigant's abusive behavior while not unduly

                                - 18 -

infringing the litigant's right to access the courts." <u>Id.</u>
at 1058.  The first of these substantive factors requires the
district court to "make substantive findings about the
frivolous or harassing nature of the plaintiff's litigation."
<u>Id.</u> at 1057 (citation omitted).  The next substantive factor
requires that "the vexatious litigant order . . . be narrowly
tailored to closely fit the specific vice encountered.'" <u>Id.</u>
(quoting <u>De Long</u>, 912 F.2d at 1148).  The court will consider
these factors seriatim in light of the extensive record
outlined herein regarding plaintiff's litigation tactics.

### A.  *Notice and Opportunity to be Heard*

Contemplating the entry of a pre-filing order against
plaintiff, in <u>Spain IV</u>, this court indicated its "[k]een[]
aware[ness] of the ramifications of such an order[.]" <u>Spain
IV</u>, 2009 WL at *8.  Therefore, "in accordance with *De Long v.
Hennessey*, . . . , and its progeny," the court g[a]ve[]
plaintiff notice . . . that it is considering entering such
a[] [pre-filing] order." <u>Id.</u> (citation omitted).  Further,
the court explicitly advised plaintiff, "[a]s the *Hennessey*
line of cases requires, [he] shall have an opportunity to be
heard in this regard." <u>Id.</u>

As plaintiff readily concedes in his "Memorandum of
Points and [A]uthorities [A]gainst the Entry of a [P]re-
filing Order[,] . . . *this obviously is* [*his*] *opportunity to
be heard*[.]" Memo. (Doc. 270) at 4:21 (emphasis added).  The
court thus finds that plaintiff had adequate notice and an
opportunity to be heard, as this Circuit requires prior to
the entry of a pre-filing order.

## B.  Record for Review

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order [i]s needed."  De Long, 912 F.2d at 1147.  Here, as just discussed, that record consists of plaintiffs' litigation activities and resultant court orders in this action, as well as those in three other actions.  What emerges from that record is a disturbing pattern by plaintiff of repetitive and baseless filings against these defendants.  The record further shows that plaintiff's conduct herein is not isolated.  The record is replete with orders by this court and others discussing the meritless nature of plaintiff's claims, as well as his numerous problematic filings and questionable litigation tactics.

## C.  *Frivolous or Harassing Nature of Filings*

The third De Long factor "gets to the heart of the vexatious litigant analysis[.]" Molski, 500 F.3d at 1059.  In making the necessary "substantive findings as to the frivolous *or* harassing nature of the litigant's actions[,] . . . the district court must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims."  Id. (citations and internal quotation marks omitted) (emphasis added).  A showing of litigiousness is not enough.  "The plaintiff's claims must not only be numerous, but also be patently without merit."  Id. (citation and internal quotation mark omitted).  In fact, in Molski the Ninth Circuit "reemphasize[d] that the simple fact that a

1  plaintiff has filed a large number of complaints, standing
2  alone, is not a basis for designating a litigant as
3  vexatious." Id. at 1061 (citations and internal quotation
4  marks omitted).  The Molski Court further "emphasize[d] that
5  the textual and factual similarity of a plaintiff's
6  complaints, standing alone, is not a basis for finding a
7  party to be a vexatious litigant." Id.

8      By the same token though, "[f]rivolous litigation is not
9  limited to cases in which a legal claim is entirely without
10 merit." Id. at 1060.  "It is also frivolous for a claimant
11 who has some measure of a legitimate claim to make false
12 factual assertions." Id.  A person "may cross the line into
13 frivolous litigation by asserting facts that are grossly
14 exaggerated or totally false." Id. at 1062.

15     The Ninth Circuit has found that "the Second Circuit's
16 five-factor standard [adopted in Safir v. United States
17 Lines, Inc., 792 F.2d 19 (2nd Cir. 1986)] provides a helpful
18 framework for applying" this Circuit's two substantive
19 factors – findings of frivolousness or harassment and
20 narrowly tailored pre-filing orders.  See id. at 1058
21 (citation omitted).  The five Safir factors are:

> (1) the litigant's history of litigation and in
> particular whether it entailed vexatious, harassing,
> or duplicative suits; (2) the litigant's motive in
> pursuing the litigation, for example, whether the
> litigant had a good faith expectation of prevailing;
> (3) whether the litigant is represented by counsel;
> (4) whether the litigant has caused unnecessary
> expense to the parties or placed a needless burden
> on the courts; and (5) whether other sanctions would
> be adequate to protect the courts and other parties.

28 Id. (citation omitted).  Employing that framework to the

record before it, it is easy to see the need for a carefully circumscribed pre-filing order against plaintiff B. Spain.

### *1.  Plaintiff's Litigation History*

Plaintiff Spain's litigation history, as explicated herein, reveals a persistent litigant who unceasingly continues to pursue claims against parties, even when those claims are clearly without merit.  Despite being given considerable leeway by this court, plaintiff did not address the numerous substantive defects in his complaints.  Instead, when he did not succeed on the merits, plaintiff resorted to filing numerous motions, some of which were duplicative, many of which were largely incomprehensible, and all of which had little or no bearing on the issues.

### *2.  Litigant's Motive*

Given the number of defendants, many whom have an extraordinarily attenuated, if any, relationship to the events complained of, and the vitriol frequently expressed in plaintiff's filings, plaintiff Spain's primary motive here clearly appears to be to harass defendants.  See Gabor v. County of Santa Clara Bd. of Supervisors, 2008 WL 902407, at *7 (N.D.Cal. Mar. 31, 2008), aff'd without pub'd opinion, 363 Fed.Appx. 456 (9th Cir. 2010) ("It is unclear whether plaintiffs[] are bringing this action for purposes of harassing the named defendants, although based on the number of defendants and the vitriol expressed in the instant complaint, it would appear that there may be some intent to harass.); see also Boustred v. Government, 2008 WL 4287570, at *2 (N.D.Cal. Sept. 17, 2008) (three actions sufficient to

support vexatious litigant order where actions contained "similar rambling, largely incomprehensible claims" and named "numerous defendants including ones having no connection" to conduct alleged).

### 3. Represented by Counsel

Plaintiff is appearing *pro se* here, as he did in Eagleburger I and Eagleburger II, and at various times during the bankruptcy proceeding.  Generally courts are protective of *pro se* litigants.  As this court first admonished plaintiff in Spain I, however, "'[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider meritorious claims of other litigants.'"  Spain I, 2008 WL 752610, at *8 (quoting Molski, 500 F.3d at 1057).  Therefore, plaintiff Spain's *pro se* status does not excuse his highly questionable and harassing litigation tactics.  Cf. Doran v. Vicorp Restaurants, Inc., 407 F.Supp.2d 1115, 1118 (C.D.Cal. 2005) ("Since fewer sanctions are available against a *pro per* litigant, the power to declare him vexatious becomes an important tool for the courts to manage their docket and prevent frivolous claims.")

### 4. Unnecessary Expense or Needless Burden

As earlier stressed, plaintiff threateningly declared that "if an extension of time [wa]s not granted, he w[ould] '*wast[e] judicial resources and the Court's time*[.]'" Id. at *3 (quoting Resp. (Doc. 136)) (emphasis added).  Plaintiff made good on his word.  Plaintiff's modus operandi throughout this litigation has been one of persistently filing motions

and other submissions which are baseless.  The court has been
considerably lenient with plaintiff, primarily because of his
*pro se* status.  Rather than productively using the
opportunities which the court has accorded him, plaintiff has
"forced defendants to undertake unnecessary expense to defend
themselves from baseless claims[,]" and respond to numerous
unwarranted filings.  See <u>Gabor</u>, 2008 WL 902407, at *7.  In
the same way, this court has expended considerable time and
effort reviewing and ruling on plaintiff's baseless claims
and motions.  See <u>id.</u>  For example, as the Poli & Ball
defendants accurately stated, when plaintiff filed his SAC,
which, "bore a 'striking resemblance to his [FAC][,]'" they
and the other defendants were "forced . . . to file an
additional round of motions to dismiss."  Resp. (Doc. 274) at
2:18-19 (quoting <u>Spain III</u>, 2009 WL 464983, at *1).  And,
instead of "respond[ing] to the merits of those motions,
plaintiff resorted to personal attacks upon counsel[,]" as
mentioned earlier.  <u>Id.</u> at 2:19-20 (citation omitted).
Thus, the court finds that plaintiff Spain has "caused
unnecessary expense to the parties and ha[s] placed a
needless burden on the courts."  See <u>Gabor</u>, 2008 WL 902407,
at *7.

### 5. *Adequacy of Other Sanctions*

When viewed in isolation, plaintiff's filings and
litigation tactics are problematic.  When viewed in the
aggregate, however, and in light of the governing legal
principles, their vexatious and harassing nature become
patently obvious. As the record demonstrates, it seems that

- 24 -

unless and until a court expressly prohibits plaintiff Spain from future filings, he will persist in abusing the court's process by filing meritless claims and motions. Especially because plaintiff has not heeded any of this court's prior warnings regarding the manner in which he has conducted this litigation, the need for a carefully circumscribed pre-filing order is readily apparent.

### D.  Narrow Tailoring

"[C]autious[ly] review[ing] . . . the pertinent circumstances[,]" as this Circuit requires, the court finds that it is necessary and proper to enter a pre-filing order in the format set forth below.  See Molski, 500 F.3d at 1057. This is part of this courts "'affirmative obligation to ensure that judicial resources are not needlessly squandered on repeated attempts by litigants to misuse the courts.'" See Englerious v. U.S. Government, 2009 WL 1393558, at *2 (W.D.Wash. May 15, 2009) (quoting O'Loughlin, 920 F.2d at 618.

In issuing this pre-filing order, the court stresses the limited nature of the relief which it is granting.  Plaintiff is enjoined from making any further filings in this action, Spain v. EMC Mortg. Co., et al., CV 07-0308 PHX-RCB. Plaintiff is further enjoined from filing any further actions in the United States District Court for the District of Arizona pertaining to the underlying real property transaction, i.e., the Alpine property, which is the subject of this lawsuit, without first following the procedures outlined below.

- 25 -

1

### *II.   Motion for Pre-Trial Scheduling Conference*

2

    In light of the foregoing, the court hereby DENIES as

3

moot plaintiff Spain's motion for a pre-trial scheduling

4

conference (Doc. 273).

5

### *Conclusion*

6

    For the reasons set forth above, the court finds that

7

plaintiff B. Spain has engaged in vexatious litigation in the

8

present action.   Therefore, because this action is closed, no

9

further pleadings or motions are allowed herein, *i.e.*, <u>Spain</u>

10

<u>v. EMC Mortg. Co., *et al.*</u>, No. CV 07-0308-PHX-RCB.   Further,

11

plaintiff shall not file any other actions in the United

12

States District Court for the District of Arizona pertaining

13

to the underlying real property transaction, *i.e.*, the Alpine

14

property, which is the subject of this lawsuit, without

15

complying with the following procedure.   Plaintiff B. Spain

16

shall first lodge the proposed complaint with this Court in

17

accordance with section II(H) of the Electronic Case Filing

18

Administrative Policies and Procedures Manual for the

19

District of Arizona.   No defendant need initially respond to

20

that lodged complaint, however.

21

    Instead:

22

> [this] Court shall review the [lodged] complaint
> and determine whether the complaint should be
> summarily denied, or whether it should proceed. If

23

> the Court summarily denies the relief requested and
> dismisses the complaint, the summary denial and

24

> dismissal order and complaint shall be placed on the
> docket. If th[is] Court allows the complaint to

25

> proceed, th[is] Court will direct the Clerk of Court
> to open a proceeding, assign a case number, and Mr.

26

> [Spain] may proceed according to the Federal Rules

27

> of [Civil] Procedure or by other appropriate
> [lawful] means.

28

See In re GTI Holdings, LLC, 420 B.R. 1, 17 (Bankr. D.Ariz. 2009).

**IT IS ORDERED:**

(1) that plaintiff B. Spain is **ENJOINED** from filing in this court, subject to the procedures set forth above, any suit against defendants pertaining to the Alpine Property; and

(2) that plaintiff B. Spain's Motion for a Pretrial Scheduling Conference is **DENIED** (Doc. 273).

DATED this 27th day of September, 2010.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to plaintiff *pro se* and counsel of record